et al., Schultz Corporation, and BL Companies, Inc. et al. Ms. Baird, I see you reserved three minutes for rebuttal. You can begin whenever you're ready. I did, Your Honor. May it please the Court, my name is Rachel Baird, and I represent the plaintiff and the appellant here, Rosemarie Levero. Ms. Levero purchased a home in Bristol, Connecticut. Actually, she purchased property that she anticipated that she would build a home on, on November 22, 2005. And she purchased this property from the city of Bristol. The city agrees that it was the seller and that Ms. Levero was the buyer. And I would just mention Joint Appendix 161 for that representation. In 2007, the city issued a request for proposal for a firm to design and plan for a reconstruction and replacement of a bridge on Matthew Street in Bristol. Matthew Street, the Matthew Street Bridge, crosses Matthew Street, and there's a stream that half is owned by the city to the middle of the stream, and from the middle of the stream on to the property at 246 Matthew Street, the property that Ms. Levero purchased, is owned by Ms. Levero. Now, B&L was the construction firm, the design firm, that received the contract to design and plan for the reconstruction of this bridge. And when it obtained the contract in June of 2007, they issued a preliminary engineering report, and I'm citing JA 5- Let me just ask you, I don't want to interrupt, but we're really focused on the district court's determination of the statute of limitations has run, so I don't know that we need the whole history of the case to analyze that. Explain to me why the district court determined that your client first discovered and expressed her dissatisfaction with the size and the appearance of the culvert in 2008, correct or incorrect? That is correct. All right. Well, it's correct that the court said that, correct. Well, let me ask you, is that factually correct? Did she not express her dissatisfaction with the size and the appearance of the culvert in 2008? She did state that in her deposition, yes. And then she surveyed her property in 2010 after the culvert had encroached on her property lines, true? That's correct. So the question is why under the various, you know, there's different three years for trespass, two years for nuisance, three years for the takings. Yes. I mean, they're all seven years for an engineer. You could pick which one. They're all untimely because the lawsuit was filed in 2018. So why was the district court wrong? If I could just go back, when the bridge was being constructed in 2008 and 2009, prior to that construction, the design firm, B&L, had said that there were four right-of-ways that needed to be done in order to construct the bridge, and none of those right-of-ways were either agreed to by Ms. Lavero or made a matter of record by the city. Now, the city, when it realized it had not done that, it then relied on, we had a prescriptive easement to encroach on your property even further than it had been encroached on previously in 1939, when the bridge was originally built. And the prescriptive easement that the city claims goes back to 15 years beyond 1939, when the bridge was originally built. Our argument is that when Ms. Lavero purchased the property from the city in 2005, that the city's easement on that property had merged with its ownership, and therefore, when Ms. Lavero bought the property, the prescriptive easement time period commenced at 2005. I'm not sure you answered my question. Why couldn't she have brought the lawsuit in 2010 where she saw the encroachment on her property? Whatever reasons they were giving her, she thought they were legally, factually wrong. She had everything she needed to know in 2010 to file the lawsuit in 2010, right? But she filed it within 15 years, and so the city never had the adverse possession of that property. Well, that's not an adverse possession situation, right? That's not. They're claiming it's a prescriptive easement. You're claiming trespass, you're claiming nuisance, and you're claiming a takings, right? Yes. All of those things, if the encroachment occurred in 2010, it would have been allegedly a trespass, right, in 2010? Yes. It would have been a nuisance in 2010? Yes. And it would have been a takings in 2010, right? But the trespass continued on, and as long as she filed a lawsuit within that 15 years based on their adverse possession, then they continued to trespass. In other words, she never agreed that they could be on that property. What case supports the notion that once you know there's a trespass that you don't have to bring the suit? Well, that would negate- As a matter of fact, they cite Rickle, which the Connecticut Supreme Court said that when it's a permanent trespass, as this obviously is, the cause of action accrues upon the creation of the trespass once some portion of the harm became observable. So there is no continuing. If it's a permanent trespass, you don't get to wait 15, 20 years, whatever you want, to sue under Connecticut law, right? Well, our argument is under Connecticut Statute 47-37 that if you wait 15 years, then a prescriptive easement attaches to the use of the property. And in this case, the plaintiff did not wait that 15 years, and so the trespass was never condoned by her, it was never accepted by her, and she, in fact, filed the lawsuit in a timely manner. The record is replete, especially in an affidavit submitted by John Levero, who resides at the property, that they complained to the city over a course of time, and from about 2010 to 2017, and the city continued to engage them in conversation, engaged BL in new concept plans, and in one case in 2014, when these concept plans were going back and forth, the city even said to BL, listen, include in there that there's a prescriptive easement. And to us, that's an admission by the city that it knew that it had no right and continued to have no right to encroach on the property. And there is a letter in the record that was prepared by the Director of Public Works, Raymond Rogatowski, that the city cannot go onto the property without Ms. Levero's permission. There was an argument that the city needed to go onto the property to make certain repairs and to do certain things. And on March 17th in 2014, Mr. Rogatowski told the city that he would need a temporary easement to go onto the property to view it, to fix it. And that's an admission by the city that it had no easement, that it had no right to be on Ms. Levero's property. And our expert, Lance Vandermark, in an affidavit that's also in the record, concurs saying that the intrusion, the infringement on the property was greater when the wing walls and the culvert and the bridge were constructed or reconstructed or replaced in 2008 and 2009 than they ever were in 1939. So to hold Ms. Levero to this three-year standard is to negate the whole concept of adverse possession, which is recognized in Connecticut law. And that's why we argue that the trespass is continuous, that the city has admitted that it cannot go onto the property. And therefore, if the city cannot go onto the property, they're admitting that there is no right. And so there was never a right for the city to build this structure on Ms. Levero's property. Thank you. We'll hear from Mr. Driscoll. Good morning. May it please the Court. Ryan Driscoll on behalf of the City of Bristol, the City of Bristol Inlands Wetlands Commission, Walter Veselka, Raymond Rogozitski, and Paul Strouderman. Your Honor, this is not a case about a prescriptive easement or adverse possession. Those were not findings made by the court in its motion for summary judgment decision. The adverse possession, excuse me, the prescriptive easement argument was made as an alternative argument on the motion for summary judgment but not ruled upon by the court. The sole issue before this court is whether or not the district court's decision was correct in its motion for summary judgment decision as to the application of the statute of limitations. And there's two issues I'd like to bring to this court's attention in that regard. The first is that it's the city's position that Ms. Levero waived any arguments as to the application of the statute of limitations. Her response to the motion for summary judgment filed by the city did not address in any way the application. The district court didn't find waiver though. The district court's whole decision was on the statute of limitations. Correct. The district court obviously did not find waiver. It is still our position that this court can find waiver because that issue was not addressed by the plaintiff before the district court. And it's not our belief it's even addressed in the plaintiff's submission to this court. Do we have the power to decide? I think you do. It's a de novo review. You can decide that here on a motion. I was just wondering, I mean, why not get to anything? It may well be easier just to go directly to the question whether it was more than seven years than it is today. Your Honor, I think the court could just as easily find here that there was a correct application of statute of limitations. As Your Honor pointed out, the record is replete with facts that show the plaintiff did not bring a claim within the necessary statute of limitations, whether it's two years for trust nuisance. Seven years is the longest it might be. Seven years is the application to BL engineers for professional. I'm just saying that would be the maximum. Oh, correct. That would be the maximum. The application of the statute of limitations as to the city would be either two or three years, depending on the claim asserted, whether it's unlawful taking trespass or nuisance. And even the plaintiff's own filings in this court show they put facts before the court showing that they were aware of the claims. As the court pointed out, the plaintiff called or sent a letter to the city in September of 2010 addressing concerns about the front of the property and the erosion caused by the project. That's in the plaintiff's brief at page 37. Before that, in 2008, December specifically, the plaintiff drove by the construction site and then called the city to complain about the unsightly appearance of the new construction in general and of a fence erected near the bridge. That can be found in the plaintiff's brief at page 36. In October of 2008, even before that, which is when the culvert started to be built, the plaintiff called City Hall to complain that a party was cutting trees in the wetlands on that property relative to the project. And we know that's when the project started. So 2008 to 2010, the plaintiff was well aware of the facts that would have established a claim if she wanted for nuisance and trespass. She also met with the city. That's what Attorney Baird was talking about. And she met with the city, and the city proposed a fix in 2014. She refused to let them on the property. Even that would be well before the claim was brought and not within the statute of limitations. Her own actions, as addressed in her brief, show that she failed to bring an action in an appropriate period of time and slept on her rights. And that is what the district court found. That decision, we believe, was proper. And unless there are any further questions from the court, I'd rely on our brief. All right, thank you. You can go to your seat. Good morning. I may please the court. Elizabeth Lake for the Appalachian Schultz Corporation. Your Honor, Schultz constructed the culvert that's at issue in this matter. I am the district court. Correctly granted summary judgment in favor of Schultz as to the plaintiff's trespass, nuisance, and improper drainage claims. And we respectfully request that the court affirm the lower court's decision as to Schultz for three reasons. First, the plaintiff advances no legal argument whatsoever as to Schultz and her appeal. Second, she did not preserve for appeal any of her claims against Schultz. And third, as the city council just addressed, the court below correctly determined that the plaintiff's claims are time barred by the applicable statute of limitations. You decided this case just on that issue. Would that be enough for you? Would that satisfy your... On which issue? The statute of limitations. Yes, Your Honor. Going back to my first point, the plaintiff's briefing makes no legal argument as to Schultz whatsoever. She offers not one legal contention as to Schultz, which warrants dismissal. Second, she didn't preserve her issues below for appeal as to Schultz. She didn't oppose our motion for summary judgment on the statute of limitation grounds. She didn't in any way respond by saying that her claims were timely. And going on to the third point, as the city's attorney already addressed, the claims are time barred. Here, Schultz constructed the culvert. It was substantially completed in 2008. Her nuisance claim is subject to the two-year statute of limitation, and the trespass claim, as we've already discussed, is subject to the three-year statute of limitation. And for those reasons, the district court below correctly held that the claims were time barred. And for those reasons, we request that this court affirm the lower court's decision. All right. Thank you. We'll hear from Mr. Plotkin. May it please the Court. I'm here for BL Companies and Derek Cole, Thomas Plotkin, the firm of Halloran and Sage in Hartford, Connecticut. Essentially, judgment should be affirmed on procedural grounds as well as substantive grounds. The procedural basis is that plaintiff did not raise, did not counter the statute of limitations argument below and really didn't do it here on appeal either. And second of all, the substantive grounds are the district court properly determined her claims fell outside the applicable statute of limitations on count one and two, trespass and nuisance. The district court applied Connecticut General Statutes 52584A to plaintiff's claims against BL, which applies to tort claims brought against engineers and architects that run seven years from the date of substantial completion of the construction that allegedly caused plaintiff's injury. I may preface this. That applies to Mr. Cole? Yes, Your Honor. It applies to Mr. Cole and the company, right? Yes. Mr. Cole, by way of preface, which I should have said initially, BL was hired to design and engineer the project, and Mr. Cole was the principal engineer. And BL provided a preliminary environmental report diagnosing the problems with the old culvert that had been there since 1939, already infringing on Mrs. Oliveira's property, and recommended how the new culvert should be built. So we have a seven-year statute of limitations for architects and engineers. Plaintiff sued BL on November 19, 2018, which means under that seven-year limitations period, the injury must have first occurred on November 19, 2011 or later. The injury, the timing runs from when the trespass was first created and an authorized entry first occurred. And substantial completion of the culvert occurred in December 2008. That is an undisputed fact, which means that under the statute of 584A, seven-year limitations ran out in 2015 at the end of the year, just three years before plaintiff brought suit. With respect to nuisance, the court applied to all defendants, Connecticut General Statute 52584, Connecticut's two-year statute of limitations for negligent injury to person or property. The period runs from when the plaintiff first suffers actionable harm in Connecticut, and such injury need not have reached its fullest manifestation to qualify. Here, again, we have a permanent nuisance, one that is not abatable. So the two-year limitations period starts to run from when the first portion of the harm, some portion of the harm was first observed by the plaintiff. Again, we have plaintiff visiting the encroaching culvert in December of 2008, as was referenced by Brother Counsel. And under that, she had to sue by December of 2010. Plaintiff has not really explained in a fashion that I understand that indicates that the nuisance and trespass limitations period get told. The district court correctly held that undisputed facts disclose no basis for tolling these doctrines. It's undisputed there's nothing hidden regarding the construction of the culvert and its encroachment on plaintiff's property that would have triggered a tolling doctrine. Long before ground broke in October 2008, the new culvert's advent was made known to her. The preexisting culvert, which also encroached on plaintiff's property, was known to her at the time she purchased the property in 2005. In early 2007, her permit from the Inland Wetlands Commission was granted conditionally upon a conservation easement on her property for repair and or replacement of the retaining wall and culvert then contemplated by the city. In March 2008, plaintiff attended a public meeting wherein the city and BL explained the necessity of replacing the old culvert and described the design plans for the new one. The construction of the culvert over several months in the second half of 2008 was impossible to hide and plaintiff acknowledged she was aware of it. As has already been stated, in December 2008, shortly after substantial completion of the culvert, she visited and saw it for herself and complained about the encroachment to the city. She complained again in September of 2010, which again, and in this instance also mentioning erosion as a problem, and that would still bring us on either the seven-year or the three-year statute, two-year statute of limitations. All right, thank you, Mr. Kline. That's on time. Okay, thank you, Your Honor. Ms. Baird, you have three minutes in rebuttal. The fact remains that in the appendix at page 443, BL indicated that in order to build the bridge and restore or replace the culvert and the wing walls, that the city had to obtain a right to construct the bridge, that it had to obtain a right to grade, that it had to retain a right to control the sedimentation, and that it had to obtain a right to construct the concrete. None of these rights were ever obtained by the city. And we have held Schultz responsible as an arm of the city because they're the ones that actually did the construction. The city itself has said at appendix 770 that it does not have the right to go onto the property unless it obtains a temporary easement. I mean, this is a bridge and a culvert that were reconstructed and replaced for presumably public safety because the retaining wall was eroding and it needed to be fixed. And for the city to say that it cannot go onto that property where its own construction is for the public safety unless it has a temporary easement or permission of the property owner is to admit that it's a continuous trespass. And by allowing it to go for 15 years without bringing a claim, Ms. Lavero would have been subject to adverse possession, but she did file this within 15 years. And that's why we're claiming that it is a trespass, that it's creating a nuisance in the ways that were described by opposing counsel here with the erosion. And although Ms. Lavero did attempt to fix the situation by engaging in conversation with the city that she believed was working with her, she has testified in an affidavit that I would ask the court to review, which does address these circumstances over the years that Ms. Lavero attempted to speak to the city to fix the situation that the city lulled her into not following a claim with regard to trespass and nuisance. She was believing that it was still being worked on by the concept plans that were being worked on by B&L in conjunction with the city as late as 2017. So for all these reasons, the three-year and the two-year statute of limitations don't matter in this case because it's a continuing trespass. The city admits that it can't go onto the property, which further concerns that it's a trespass. And none of the rights that B&L Company said were needed to build that bridge and extend the culvert were ever obtained. Thank you. Thank you, Ms. Baird. Thank you to all of you. It was our decision. Have a good day.